099 Henry Experigin v. the United States Department of Health and Human Services. I hope I pronounced his name correctly. Yes. May it please the court, important issues in this case revolve around the agency's improper use of a 2006 three-level performance evaluation plan which contained different performance standards and critical elements, and more importantly, added a minimally successful level. It just seems to me that if the agency had done precisely what you're advocating, it should have done. In other words, establish the PIP in early 2007 based on the 2007 revised PIP, and the agency should have used the current 2007 four-level performance evaluation plan, which contained different performance standards and critical elements, and more importantly, added a minimally successful level. So the agency should have used the 2005 standards as opposed to the 2006 standards, right? That is our contention, yes. It seems to me that you or in another case, one would be making the argument that that was improper because a PIP is supposed to be based right on the PIP was a runoff of the evaluation he got in 2006, which had certain elements. And it seems to me a case could be made, arguably, that if they did a PIP based on the 2007 here, you'd be coming in and saying, no, that was improper. You're not allowed to do that. No, I don't agree with you, Your Honor. I would have been perfectly appropriate. The agency didn't have to change its performance evaluation plan for 2007. That was its option. But once it did that, it couldn't go back and revert to the superseded 2006 plan. And you're saying, and the harm to your client as a result of the discrepancy between the two is? That he didn't have the opportunity to perform at the minimally successful level, which would have avoided his being removed in 2007. So it has nothing to do with the change, that there was a substantive change in the duties or requirements between the two evaluations, right? That's correct. I don't see that there was no substantive change in his duties or requirements. It's just a matter of what the grading levels are? Yes, that's essentially correct. There really was no major change. Is there anything you can point us to in terms of a statute or regulation that would compel the temporal change you're advocating here? Well, there's no specific case law on this point, because there's no case that have occurred. However, in the regulations and the OPM regulations in 5 CFR 432.204, it points out that any time during the appraisal period that the employee's performance is deemed to be unacceptable, he can be placed into a PIP. And here, since the 2007 performance plan was given to him in December of 2006, they could have placed him on a PIP at the same time in February of 2007, using the 2007 performance plan. There was no prohibition against it. They had every opportunity to do so. What is the line which you just cited? I thought the line where you get the PIP, the PIP has to follow up on a problematic evaluation, right? No, it doesn't. There doesn't have to be a formal evaluation. There has to be determination that the employee's performing at an unacceptable level. But there was no determination by the time they wanted to put him on the PIP, and you're not suggesting they had to wait longer? No, they did not. There had been no evaluation under the 2007 standards, right? That's correct, but they didn't have to wait for an evaluation in the 2007 standards. There's no minimum period before they could place him on a PIP. They could make that determination after 45 days here and say, look, he wasn't performing at the minimally successful level. Well, what if they wanted to issue the PIP on January 2nd and the 2007 standards kick in on January 1st? You would be saying that, no, you can't have the PIP rely on the 2007 standards. You have to go back to 2006, right? Well, I would argue no, that they would have to wait. At least give him a reasonable opportunity to demonstrate that he could perform successfully under the 2007 standards. I don't know what that minimum time is, but clearly it would not be one day. Yeah, but you suggested a minute ago it might be 45 days. How do we know that for certain? I mean, what was wrong with the agency then even being prudent and say, look, we're not clear what enough time for evaluation under the 2007 standards would be, but indeed the reason we're doing the PIP is because he failed on the 2006 standards and that's what we ought to apply. It's just hard for me to understand how that's prejudicial to your client or wrong somehow. Well, it's prejudicial again because he didn't have the opportunity to perform at the minimally successful level and the way the minimally successful level is defined in the 2007 performance evaluation plan, it's meaningless. It was a backward standard that didn't provide any guidance, but yet he was held to the fully acceptable standard rather than the minimally successful standard. So that was clearly prejudicial. Well, there's no allegation here that your client didn't understand what was expected of him during the PIP and what he was supposed to perform, right? Yes, but again, it was based on the wrong standard and even when the PIP was established, it was not clear because if you look at the PIP notice itself, it required the employee to reach an acceptable level as described in your current performance plan, so it's confusing. The agency is shifting back and forth. Well, there may be other things that are confusing, but I understood that this case was not about your client arguing that he couldn't perform satisfactorily under the PIP because he didn't appreciate what was required of him. I thought it was quite clear that he did. There were numerous meetings that he knew of. That's not in dispute. And the whole process here was flawed because the agency could have handled it differently. There was no reason for them to do what they did. They rather took a shortcut to put the employer at extreme disadvantage so they couldn't meet the minimally successful level. In fact, when they rated the employee in 2007, they actually rated him in 2007 for a mid-term performance review prior to getting the Notice of Proposed Removal, and there they rated him on the 2007 performance plan. And that was after the completion of the PIP, right? Yes, after the completion of the PIP, but prior to the Notice of Proposed Removal. So they showed they could use the 2007 plan when they wanted to. They didn't use it for purpose of the Notice of Proposed Removal because they probably realized they couldn't substantiate that he was performing at the minimally successful level because they never evaluated him at that level. And again, if you look at the way the performance standards are written, the minimally successful level is a totally backward standard. It states that the, and this is on appendix on page 83 of the agency appendix, it states the employee had difficulties in meeting expectations. This is the minimum level of acceptable performance for retention on the job. Improvement is necessary. Well, this gives him no standard whatsoever. And yet, the deciding official indicated in her decision level that in fact the employee performed better during his 2007 PIP than he did during 2006. So if his performance improved and he was allowed to perform at the minimally successful level, there's a good chance that he would have been successful if the agency had given him that opportunity. They never did so. And the agencies claimed that they would have to wait another year before taking a performance-based action if it used the 2007 performance evaluation plan. It's simply incorrect as we previously discussed. There was no need for them to wait another year. They could have done what they did in the same time frame but used the proper performance evaluation plan. The agency was also unable to distinguish between fully successful and minimally successful levels of performance. The agency deciding official admitted there was a direct correlation between the 80% performance standard and failing a performance evaluation for the year. In fact, she was unable to explain what was the difference between minimally successful and fully successful performance. And she conceded that the word occasionally, which is used in defining the minimally successful performance, was in the eyes of the beholder. And this court has already ruled previously in its major decision in the Wilson case that the term occasionally is meaningless because it required the agency to prove a negative. Almost 25 years have passed since this court's decision in Wilson and over 20 years since its decision in Ibo. Agencies have had more than sufficient time to develop performance standards which reasonably inform federal employees what is acceptable performance. The court should reverse the removal of Dr. Perrigan is not in accordance with law. Good morning. May it please the court. The court should sustain the board's decision here. I'd like to focus on the allegation that the 2007 performance plan is somehow different than the 2006 plan. At the end of the day, none of these arguments make a difference for a variety of reasons. First, of course, the argument is irrelevant because it was entirely proper for the agency to base the PIP upon the 06 performance plan. Keep in mind that the purpose of a PIP is that it's a performance improvement plan. Improvement over what? Improvement over the standards that you failed. It was entirely reasonable for the agency to use the 2006 performance plan. Moreover, even if the agency was somehow required here to base the PIP upon the 2007 standards, the PIP can give content to those standards. It can clarify any ambiguity. To the extent there's any ambiguity in the 2007 standards, it's the PIP that controls. It is kind of counterintuitive, is it not? Let's assume the difference between 2006 and 2007 standards eliminated one requirement, that there were five things you had to be doing. Let's assume that the failure in 2006 was on this requirement that no longer appeared. It was no longer one of the duties required in 2007. It would be counterintuitive, would it not, to be having a PIP determine whether a person ought to be removed from a job which currently doesn't even require him to do what he failed to do in 2006, right? That's true, but that's very different from this case. There's no dispute that Dr. Perrigan's job didn't change between 2006 and 2007. Now, with respect to the whole issue of the 80% and whether or not that's somehow inconsistent with the 2007 performance plan, keep in mind, well, again, it's the PIP that controls. So to the extent there's any ambiguity, the PIP clarifies that, yes, you still had to submit 80% of your projects on time. But also keep in mind that Dr. Ekelman, that's Dr. Perrigan's supervisor, explained at the hearing that at the beginning of 2007, employees were put on notice that even though the 2007 performance plan doesn't specifically mention the 80% requirement, in early 2007, employees were told that that requirement was still a requirement in 2007. Well, I thought maybe I misunderstood. I thought at least one of Mr. Passman's arguments was not with respect to the 80% or whatever, but with respect to, and I don't know what the term of art is, the categories. It's like the grades, A through F, and that there were more in 2007, so that gave more flexibility so he wouldn't appear at the bottom of the row. Well, what he's saying is that there were four standards, four rungs in 2007. And three. Three in 2006, and that there's a conflict between the 2007 standards and the PIP because the 2007 standards don't specifically mention the 80% requirement. And our point is there's no conflict. The PIP, and even if there is some ambiguity, the PIP clarifies and says, look, you still have to meet the 80% requirements. And Dr. Eckelman testified that employees were put on notice in 2007 that that was still a requirement. Moreover, keep in mind that failing to meet 80%, failing to turn in 80% of his assignments on time, that was only one reason why Dr. Perrigan failed the PIP. Another reason why he failed the PIP was that he still had assignments at the end of the PIP that were more than three months overdue. And there's been no allegation that the 07 performance plans, even if they apply here, that that performance standards in 07 are somehow inconsistent with that requirement in the PIP, that he have no assignments that are more than three months overdue. Well, would it be clear, would there be a possible disparity between what rung of the ladder he was graded between 2007 and 2006? No, there wouldn't. And again, the only argument on that is with respect to the 80%, not with respect to the failure to have no assignments that are more than three months overdue. But with respect to the 80%, what Dr. Perrigan is saying is that, well, I was allowed to, under the 07 standards, I was allowed to occasionally fail to turn in assignments on time. Well, keep in mind, during the PIP, he only turned in 57% of his assignments on time, so he still had a 43% failure rate. Well, that is not occasionally. That is consistently failing to turn in assignments on time. And again, keep in mind, this is an employee that, in 2006, had only a 33% success rate in terms of when he turned in assignments on time and had assignments that were as overdue as three years, assignments that were more than three years overdue. And moreover, lest there be any doubt with respect to the 2007 standards and how Dr. Perrigan was performing under those standards, well, it's true that Dr. Perrigan never received a final year-end review for 2007 because he was proposed for removal before the end of 07. He did receive a mid-year review in 2007. And what that mid-year review says, it's at page 131 of the Joint Appendix, that mid-year review says, you have failed to meet the first four of six evaluation criteria in your PIP and you have failed to meet several critical criteria in your 2007 performance plan during the first half of 2007. So he was failing his 2007 performance plan anyway. So for all these reasons, we respectfully request that the Board's decision be affirmed. Thank you. Mr. Passman. Again, the record is clear that Dr. Perrigan was never evaluated in his PIP for the minimally successful performance standard. And the way it's written, it was so ambiguous, he couldn't possibly know what was expected of him, nor could the agency determine what was expected of him. The agency should not be allowed to use a superseded performance evaluation plan to remove an employee in the subsequent year and not give him a reasonable opportunity to prove his performance. The Board case law all indicates that the agency is required to follow the performance levels that it establishes. And there's no case that indicates it goes back to a prior year. That's clearly prejudicial. And as a result, the Court should reverse the agency's decision. If there's any further questions. Thank you.